**JONES TRUCK LINES, INC.**

v.

**ADMIRAL MARINE COMPANY, INC.**

Civ. A. 93–2189.

United States District Court,
E.D. Louisiana.

March 22, 1994.

J. Donald Morgan, Stacy G. Butler, Baton Rouge, LA, for plaintiff.

John W. Hite, III, Sessions & Fishman, New Orleans, LA, for defendant.

## ORDER AND REASONS

MENTZ, District Judge.

Before the Court is plaintiff Jones Truck Lines, Inc.'s (Jones) motion to strike all of defendant Admiral Marine Company, Inc.'s (Admiral) defenses set forth in its answer. Upon review of the pleadings, the memoranda, and the applicable law, this Court, sua sponte, orders these proceedings be stayed as more fully set forth below.

### I. Facts

The instant case arises out of a relationship between Jones and Admiral in which Admiral repeatedly hired Jones to transport freight to various interstate and intrastate destinations between the dates of July 1988 and January 1989. Jurisdiction is based upon the Interstate Commerce Act.

On July 9, 1991, Jones filed for bankruptcy under Chapter 11 of the U.S. Bankruptcy Code in the Western District of Arkansas. Subsequent to its Chapter 11 filing, Jones audited all its shipments of defendant Admiral's goods "by comparing the commodities, weights, points of origin and destination, and declared value of each shipment to the applicable tariff rate ... on file with the Interstate Commerce Commission" (ICC).[1] As a result of this audit, Jones claims to have discovered a discrepancy in its favor between the amount it actually collected from Admiral and the amount allegedly due under the applicable tariff rates filed with the ICC. Jones instituted the instant suit on July 6, 1993, when Admiral refused to pay the difference.

Admiral answered, inter alia, that it is not liable for the undercharges because throughout the parties' relationship Jones was operating as a contract carrier. Therefore, Admiral argues, Jones' prices were controlled by the terms of the parties' contract rather than the ICC tariff rates. Jones, in response, filed the instant motion to strike Admiral's defenses, claiming Jones was not acting as a contract carrier and therefore its prices were required by law to be consistent with its tariff rates on file with the ICC. In opposing the motion, Admiral maintains that

the Negotiated Rates Act (NRA), Pub.L. No. 103–180, 107 Stat. 2044, enacted on December 3, 1993—three days before Admiral answered, governs the instant action. Contrarily, Jones contends the NRA is inapplicable to a bankrupt motor carrier.

### II. Analysis

■ Due to its recent enactment, there is little case law interpreting the various provisions of the NRA. However, from its legislative history it is clear that Congress intended the NRA to apply to exactly the situation presented by the case at bar—a bankrupt motor carrier suing past shippers to collect the difference between the rate actually charged and the rate on file with the ICC. H.R.Rep. No. 103–359, 103rd Cong., 1st Sess., (1993), *reprinted in,* 1993 U.S.C.C.A.N. 2534 ("The purpose ... is to provide a statutory process for resolving disputes for claims involving negotiated transportation rates brought about by trustees for non-operating motor carriers for past transportation services."); S.Rep. No. 103–79, 103rd Cong., 1st Sess. (1993), 1993 WL 241281 ("The bill ... is intended to alleviate the freight motor carrier "undercharge" litigation crisis by establishing a statutory procedure for resolving disputes from efforts by trustees for bankrupt motor carriers ... to collect additional amounts for past transportation provided ...").

Moreover, the NRA expressly provides that its new procedures are applicable to "all claims pending as of the date of the enactment of this Act." Negotiated Rates Act of 1993, Pub.L. No. 103–180, § 2(c), 107 Stat. 2044 (1993). *See e.g.,* H.R.Rep. No. 103–359, p. 2539 ("[s]ubsection 2(c) makes the new procedures applicable to all claims pending on date of enactment."). Therefore, plaintiff is erroneous in its assertion the NRA does not apply to bankrupt motor carriers. However, rather than rule on plaintiff's motion to strike, the Court stays these proceedings for the following reasons.

### A. Prerequisites for coverage under the NRA

■ In order to be eligible to take advantage of the new procedures provided in the

---

1. Complaint, ¶ 5.

NRA, a shipper must make two showings. First, under subparagraph (A) a shipper must demonstrate that the carrier is no longer transporting property. Second, under subparagraph (B), the shipper must also show: (1) the carrier offered the shipper a rate different than that on file with the ICC; (2) the shipper tendered his freight to the carrier in reasonable reliance on the rate; (3) the carrier did not file a tariff covering the offered rate with the ICC in a timely or proper manner; (4) the carrier billed and collected the offered rate; and (5) the carrier is presently demanding payment of a higher rate filed in a tariff. Defendant, through its answer, put at issue all of the required elements stated above.

Section 2(a) of the NRA provides "if there is a dispute as to the showing under subparagraph (b) [above] such dispute *shall* be resolved by the Commission." (emphasis added). Thus, in the instant case, the NRA expressly requires the Court to defer to the ICC.

B. Contract versus common carrier status

■ The primary jurisdiction doctrine provides that in cases where certain issues are within the special competence of an administrative agency, a district court has the discretion to stay a proceeding in order to enable referral of the action to the agency. *Reiter v. Cooper*, —— U.S. ——, ——, 113 S.Ct. 1213, 1220, 122 L.Ed.2d 604 (1993). Specifically, the Fifth Circuit held that in order to allow the ICC to utilize its expertise and to achieve uniform decisions and policy, the primary jurisdiction doctrine was applicable where the reasonableness of a tariff rate was at issue. *Advance United Expressways v. Eastman Kodak*, 965 F.2d 1347, 1352–53 (5th Cir.1992), *pet. reh'g. denied*, 990 F.2d 184 (5th Cir.1993). *See also, Jones Truck Lines,*

*Inc. v. Dr. G.H. Tichenor Antiseptic Co.*, 1994 WL 50239 (E.D.La.1994) (J. Livaudais).

Section 8 of the NRA declares that for all disputes "as to whether certain transportation is provided in its [the carrier's] common carrier or contract capacity ... the Commission [ICC] *shall* have jurisdiction to, and *shall* resolve the dispute." (emphasis added).

■ Therefore, according to the plain language of the statute, Congress intended for issues raised by the instant motion and lawsuit to be heard by the ICC. The Court is therefore bound to stay the instant action pending initial review by the ICC.[2]

Accordingly,

**IT IS HEREBY ORDERED that**

1. These proceedings are **STAYED** pending initial review by the Interstate Commerce Commission,

2. The Clerk of Court is directed to mark this action **CLOSED** for statistical purposes and place this matter in a Civil Suspense File,

3. The Court shall retain jurisdiction over these proceedings and the matter shall be restored to the trial docket upon motion of a party within 90 days from the date that the order of the Interstate Commerce becomes final, pursuant to 28 U.S.C. § 1336(c),

4. This order shall not prejudice the rights of the parties to this litigation, and

5. The pre-trial conference scheduled for **Tuesday, April 26, 1994,** and the non-jury trial of this matter scheduled for **Monday, May 9, 1994,** are hereby **CANCELLED.**

---

**2.** Title 28, section 1336(b) provides in pertinent part: "When a district court ... refers a question or issue to the Interstate Commerce Commission for determination, the court which referred the question or issue shall have exclusive jurisdiction of a civil action to enforce, enjoin, set aside, annul, or suspend, in whole or in part, any order of the Interstate Commerce Commission arising out of such referral." However, as noted by Judge Livaudais, no specific procedure for "referral" is provided. Thus, rather than ordering a referral, the Court can only stay the instant proceedings in order to allow the parties to pursue administrative action. See *Reiter*, —— U.S. at ——, n. 3, 113 S.Ct. at 1220, n. 3 ("The ICA (like most statutes) contains no mechanism whereby a court can on its own authority demand or request a determination from the agency; that is left to the adversary system, the court merely staying its proceedings while the shipper files an administrative complaint under § 11701(b).")