In the Matter of BEST REFRIGERATED EXPRESS, INC., Debtor.

Thomas F. HOARTY, Trustee, Plaintiff,

v.

MIDWEST CARRIERS CORPORATION, Defendant.

Bankruptcy Nos. BK89–80169, A91–8018.

United States Bankruptcy Court, D. Nebraska.

April 22, 1994.

Robert Gallagher, Northampton, MA, and Thomas Saladino of Fitzgerald, Schorr, Barmettler & Brennan, Omaha, NE, for Midwest Carriers Corp.

John Siegler of Sims, Walker & Steinfeld, Washington, DC, for Thomas F. Hoarty, Trustee.

### MEMORANDUM

TIMOTHY J. MAHONEY, Chief Judge.

Hearing was held on March 18, 1994, on the Motion for Summary Judgment filed by Midwest Carriers Corporation. Appearing on behalf of Midwest Carriers Corporation was Robert Gallagher of Northampton, Massachusetts. Also appearing on behalf of Midwest Carriers Corporation was Thomas Saladino of Fitzgerald, Schorr, Barmettler & Brennan of Omaha, Nebraska. Appearing on behalf of Thomas F. Hoarty, Trustee, was John Siegler of Sims, Walker & Steinfeld, Washington, D.C. This memorandum contains findings of fact and conclusions of law required by Fed.Bankr.R. 7052 and Fed. R.Civ.P. 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(A) and (E).

### Background

On February 7, 1989, the debtor, Best Refrigerated Express, Inc. (Best), filed a petition under Chapter 11 of the Bankruptcy Code. When it was operating, Best provided motor carriage transportation services in interstate commerce. Best ceased operating in February, 1989. Thomas F. Hoarty, Jr., was appointed trustee of the estate on February 27, 1989. The trustee engaged Trans–Allied Audit Company (Trans–Allied) to conduct an audit of Best's past freight bills to determine whether Best billed its customers according to the motor common carrier rates that Best had on file with the Interstate Commerce Commission (ICC) pursuant to 49 U.S.C. § 10761(a) or according to another negotiated rate. If there was a discrepancy between the amount billed by Best at the time of the shipment and the amount Trans–Allied determined should have been billed, the trustee authorized Trans–Allied to collect the difference.

Included in this audit were shipments transported by Best which were tendered by Midwest Carriers Corporation (Midwest). Trans–Allied billed Midwest $16,233.62 in undercharge bills, which represented the difference between the amount billed at the time the shipments took place and the amount Trans–Allied determined to be due. Midwest refused to pay these charges. The trustee brought this adversary proceeding to collect the alleged undercharge claim plus prejudgment interest pursuant to 49 U.S.C. §§ 10741(a), 10761, 10762 of the Interstate Commerce Act (ICA).

The parties raised the following issues before the Court: (1) Whether Best's filed motor common carrier rates applied to all shipments tendered by Midwest; (2) Whether

the rates sought to be collected were reasonable rates; (3) Whether Best provided transportation for Midwest as a common carrier or a contract carrier; (4) If Midwest is liable for the filed rate, the amount is due; (5) Whether Midwest was a consignor or consignee for transportation and whether Best accepted the shipment as such; (6) Whether the trustee is entitled to prejudgment interest. *Preliminary Pretrial Statement,* Filing No. 17, p. 3.

On October 8, 1991, the adversary proceeding was stayed and several of these issues were referred to the ICC, the agency that had exclusive and primary jurisdiction over some of the issues. Filing No. 18.

Before the ICC reached a decision, Congress passed and the President signed into law the Negotiated Rates Act of 1993. Negotiated Rates Act of 1993, Pub.L. No. 103–180, §§ 1–9, 107 Stat. 2044 (codified as amended at 49 U.S.C. § 10701) (1994) [hereinafter the NRA]. The NRA has significantly changed the law by promulgating retroactive standards to determine whether a motor carrier or its representative is entitled to undercharge claims.

Midwest returned to this Court to request that the Court grant it summary judgment. Filing No. 20. Midwest alleged that it is a "small-business concern" under 15 U.S.C. § 631 (the Small Business Act), and as such, Midwest is exempt from liability for undercharge claims under the NRA. § 2(a)(f)(9)(A), codified at 49 U.S.C. § 10701(f)(9)(A).

A hearing was held on March 18, 1994. At the hearing, Best and Midwest stipulated that Midwest met the criteria of a "small-business concern" under 15 U.S.C. § 631. The trustee, in resistance to the motion, argued that the NRA is inapplicable for two reasons: (1) Section 9 of the NRA exempts bankrupt carriers from the NRA; and (2) the NRA is unenforceable against a bankruptcy estate because the NRA violates Sections 541(c)(1), 363(l) and 362(a)(3) of the Bankruptcy Code.

## Decision

Midwest's motion for summary judgment is granted because the NRA exempts "small business concerns" from undercharge claims.

## Discussion

Motions for summary judgment are filed pursuant to Fed.Bankr.R. 7056, which incorporates Fed.R.Civ.P.R. 56. A summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.Bankr.R. 7056(c); Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). Consideration of a summary judgment motion at this juncture is appropriate because there is no issue as to whether Midwest qualifies as a small business. The only issue for this Court is a question of law: Does Section 2(a)(f)(9)(A) of the NRA retroactively apply to eliminate the bankruptcy trustee's undercharge claim?

### A. *The NRA*

Section 2 of the NRA is entitled "Procedures for Resolving Claims Involving Unfiled, Negotiated Transportation Rates." Section 2 amends Section 10701 of the ICA by adding a new subsection (f). The portion of Section 2(a)(f) which movant argued entitles it to summary judgment is the following:

(9) CLAIMS INVOLVING SMALL–BUSINESS CONCERNS, CHARITABLE ORGANIZATIONS, AND RECYCLABLE MATERIALS.—Notwithstanding paragraphs (2), (3), and (4), a person from whom the additional legally applicable and effective tariff rate or charges are sought shall not be liable for the difference between the carrier's applicable and effective tariff rate and the rate originally billed and paid—(A) if such person qualifies as a small-business concern under the Small Business Act (15 U.S.C. 631 et seq.).

§ 2(a)(f)(9)(A), codified at 49 U.S.C. § 10701(f)(9)(A).

■ The retroactive applicability of Section 2 to pending claims is set forth in Section 2(c) of the NRA but not codified in the

U.S.Code. That section states: "The amendments made by subsections (a) and (b) of this section shall apply to all claims pending as of the date of the enactment of this Act...." § 2(c). In this Circuit, retroactive legislation that adjusts the burdens and benefits of economic life is presumed constitutional, and it would be the trustee's burden to show that the NRA is arbitrary and serves no rational legislative purpose. *United States v. Northeastern Pharmaceutical & Chem. Co., Inc.,* 810 F.2d 726 (8th Cir.1986) (citing *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976), to support retroactive application of CERCLA).

■ Although the trustee did not argue that the NRA is an unconstitutional use of Congress's authority, the trustee does argue that its property right, the cause of action for an undercharge claim, has been eliminated by the apparent retroactive application of the statute. In the District of Nebraska, bankruptcy courts are not permitted to issue final and binding orders on the constitutionality of statutes. *Associated Grocers of Nebraska Coop., Inc. v. American Home Products Corp.,* 62 B.R. 439, 442 n. 3 (D.Neb.1986). Therefore, this Court will not discuss whether the NRA constitutes a taking under the Fifth Amendment and will presume that the statue is constitutional because Congress has expressly stated that the NRA applies retroactively. *United States v. Security Industrial Bank,* 459 U.S. 70, 81, 103 S.Ct. 407, 413–14, 74 L.Ed.2d 235 (1982) (acknowledging that Congress may pass a law which retroactively eliminates property rights if the statute explicitly states that the statute applies retroactively, but holding that where Congress had not explicitly commanded retroactive application in the legislation, the elimination of a state property right by Federal bankruptcy law constituted an impermissible taking under the Fifth Amendment of the Constitution).

It appears clear from a reading of Section 2(a)(f)(9)(A) of the NRA that movant is entitled to summary judgment since the parties have stipulated that movant is a "small-business concern," and Congress has specifically authorized that Section 2(a)(f)(9)(A) applies retroactively to pending claims. However, it is necessary to discuss Section 2(a)(f)(9)(A) in relation to other provisions of the NRA and in conjunction with the Bankruptcy Code before finally determining the rights of the parties.

Much of Section 2(a) of the NRA focuses on alternative measures to settle undercharge claims. Section 2(a)(f)(1) provides the general framework for settling undercharge claims:

When a claim is made by a motor carrier of property ..., or by a party representing such a carrier ... regarding the collection of rates or charges for such transportation in addition to those originally billed and collected by the carrier ... for such transportation, the person against whom the claim is made may elect to satisfy the claim under the provisions of paragraph (2), (3), or (4) of this subsection, upon showing that—(A) the carrier ... is no longer transporting property or is transporting property for the purpose of avoiding the application of this subsection; and (B) with respect to the claim—

(i) the person was offered a transportation rate by the carrier ... other than that legally on file with the Commission for the transportation service; (ii) the person tendered freight to the carrier ... in reasonable reliance upon the offered transportation rate; (iii) the carrier ... did not properly or timely file with the Commission a tariff providing for such transportation rate or failed to enter into an agreement for contract carriage; (iv) such transportation rate was billed and collected by the carrier ...; and (v) the carrier ... demands additional payment of a higher rate filed in a tariff.

If there is a dispute as to the showing under subparagraph (A), such dispute shall be resolved by the court in which the claim is brought. If there is a dispute as to the showing under subparagraph (B), such dispute shall be resolved by the Commission.... Satisfaction under paragraph (2), (3), or (4) of this subsection shall be binding on the parties....

§ 2(a)(f)(1), codified at 49 U.S.C. § 10701(f)(1). Paragraphs (2), (3), and (4)

provide a party against whom the undercharge claims are made the opportunity to settle the claims by only paying a percentage of the claim based upon weight of the goods transported or the party's status as a public warehouseman. § 2(a)(f)(2), (3) & (4), codified at 49 U.S.C. § 10701(f)(2), (3) & (4).

Finally, the last section of the NRA relevant to the summary judgment motion is Section 9. Section 9 which is not codified in the U.S.Code is entitled "Limitation on Statutory Construction," and states:

> Nothing in this Act (including any amendment made by this Act) shall be construed as limiting or otherwise affecting application of title 11, United States Code, relating to bankruptcy; title 28, United States Code, relating to the jurisdiction of the courts of the United States (including bankruptcy courts); or the Employee Retirement Income Security Act of 1974.

The NRA, § 9.

## B. *The Trustee's Objections*

### 1. *Section 9 exempts all bankrupt carriers from the NRA*

The trustee's first argument is that Section 9 of the NRA exempts all bankrupt carriers from the application of the NRA. The trustee explained the history of the NRA. According to the trustee, the Public Works and Transportation Committee of the House of Representatives, which oversees the ICA, had been trying to move an NRA-styled bill for several years that targeted bankruptcy, as the Senate's version of the bill did. In 1993, the NRA resurfaced, but the bill was stalled before reaching the floor of the House. Concerns were raised by the Chairman of the Judiciary Committee, Jack Brooks, that the NRA could not be submitted to the House for vote and had to be sequentially referred to his committee because the Judiciary Committee, which oversees the Bankruptcy Code, had not had the opportunity to review the NRA to determine how the bill would impact the Bankruptcy Code.

The Chairman of the Public Works and Transportation Committee, Norman Mineta, amended the bill by adding Section 9 of the NRA to avoid referral to the Judiciary Committee and delay. The trustee's position is that the Section 9 amendment was a last minute decision by the House to exclude all bankruptcy cases from the new requirements of the NRA.

### 2. *The NRA violates 11 U.S.C. §§ 541(c)(1), 363(l)*

The trustee's second objection is that the NRA violates 11 U.S.C. §§ 541(c)(1), 363(l). The trustee alleges that the NRA, through Section 2(a)(f)(9)(A), terminates the estate's interest in Best's pre-bankruptcy right to bring a suit for undercharge claims against movant and that the termination is in violation of the Bankruptcy Code.

Section 541(c)(1) of the Bankruptcy Code states:

> [A]n interest of the debtor in property becomes property of the estate ... notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—(B) that is conditioned on the insolvency or financial condition of the debtor, ...

11 U.S.C. § 541(c)(1). Section 363(l) states that "the trustee may use, sell, or lease property ... notwithstanding any provision in ... applicable law that is conditioned on the insolvency or financial condition of the debtor ..." 11 U.S.C. § 363(l).

The trustee's argument is broken into three segments. First, Best's right to collect undercharge claims from movant is property of the estate. Second, the NRA is an applicable nonbankruptcy law by virtue of Section 9 of the NRA. Third, Section 2(a)(f)(9) is conditioned on the financial condition of Best because the "no longer transporting property" clause in Section 2(a)(f)(1)(A) of the NRA is the equivalent of the phrase "financial condition" in 11 U.S.C. §§ 541(c)(1)(A), 363(l).

## Analysis

### A. *Exemption of Bankrupt Carriers*

■ The trustee's argument that Section 9 of the NRA operated to exclude bankrupt carriers is without merit. When the Senate Committee on Commerce, Science, and Transportation and the House Committee on Public Works and Transportation issued

their reports on their respective negotiated rates bills, both reports overwhelmingly made clear that the NRA would apply to bankrupt carriers.

The Senate Report stated the purpose of the bill:

The bill, as reported, is intended to alleviate the freight motor carrier "undercharge" litigation crisis by establishing a statutory procedure for resolving disputes resulting from efforts by trustees for bankrupt motor carriers ... to collect additional amounts for past transportation provided, ...

S.Rep. No. 103–79, 103d Cong., 1st Sess. 7 (1993) U.S.Code Cong. & Ad.News at p. 2534 [hereinafter S.Rep.].

The House Report, whose amended bill H.R. 2121 was substituted with the text of the Senate bill and amended, stated a similar purpose for enacting the NRA:

The purpose of H.R. 2121, as reported, is to provide a statutory process for resolving disputes for claims involving negotiated transportation rates brought about by trustees for non-operating motor carriers for past transportation services.

H.R.Rep. No. 103–359, 103d Cong., 1st Sess. 7 (1993) U.S.Code Cong. & Ad.News at p. 2534 [hereinafter H.R.Rep.]

The trustee focused his argument on an exchange of letters between the Chairman of the Public Works and Transportation Committee, who oversees the ICA, and the Chairman of the Judiciary Committee, who oversees the Bankruptcy Code and court jurisdiction. *See* H.R.Rep. at 16. In the letter to Representative Mineta from Representative Brooks, Brooks' only concern with the House bill from the Judiciary Committee's standpoint appeared to be with the jurisdictional issues, not the effect of the NRA on general Bankruptcy Code provisions. *Id.* In fact, only Representative Mineta even used the word "bankruptcy code" in his letter. *Id.*

Further evidence that Section 9 of the NRA was intended only to clarify the jurisdiction of the courts and the ICC is contained in the Congressional Record. When explaining the Section 9 amendment to the House of Representatives, Representative Mineta stated:

[W]e are clarifying in section 9 of this bill that we do not intend in this legislation to affect either the bankruptcy code or the jurisdiction of the bankruptcy courts, matters over which our committee does not have jurisdiction. At present, when a carrier is in bankruptcy, and when in the course of the bankruptcy proceeding an issue arises over which the ICC has particular expertise, the court typically refers that issue to the ICC pursuant to the doctrine of primary jurisdiction. The ICC decides that particular issue, and the ICC's decision is then incorporated by the court into the overall adjudication of the bankruptcy case. Nothing in this legislation would alter the current statutory framework which established the respective jurisdictions of the courts and the ICC.

139 Cong.Rec. H9603 (daily ed. Nov. 15, 1993) (statement of Rep. Mineta, Chairman of the Public Works and Transportation Committee).

Representative Brooks reinforced this interpretation that Section 9 of the NRA applied only to the jurisdiction of the courts by stating the following:

[T]he Committee on the Judiciary had earlier expressed concern that H.R. 2121, the Negotiated Rates Act of 1993, as ordered reported by the Committee on Public Works and Transportation, could have been construed to limit the jurisdiction of the Federal courts, including the bankruptcy courts. However, ..., Mr. Mineta has offered an amendment to section 9 of H.R. 2121 clarifying that nothing in the proposed act shall be construed to limit or otherwise affect the jurisdiction of the Federal courts to make determinations in bankruptcy cases and proceedings.

139 Cong.Rec. H9603 (daily ed. Nov. 15, 1993) (statement of Rep. Brooks, Chairman of the Committee on the Judiciary).

Section 9 was inserted in the House's version of the bill to clarify the jurisdiction of the courts and the ICC. In Section 9, Congress intended that courts will retain their original jurisdiction and that referral to the ICC will not interfere with the original juris-

diction of the courts. For example, this Court would continue to have original jurisdiction of a bankruptcy case, but it would refer those matters designated for the expertise of the ICC under the NRA to the ICC. However, under Section 9 of the NRA, the referral would only be limited to that issue, and this Court would retain jurisdiction to determine all matters relating to the bankruptcy estate, including the enforcement of the ICC decision on the estate. There is nothing in any legislative history materials and, more importantly, in the language of the statute to suggest that Section 9 was added to exempt bankrupt carriers from the NRA, or that it was ever even suggested by any member of Congress that the NRA would not apply to bankrupt carriers.

### B. *The NRA and the Bankruptcy Code*

#### 1. *The "small business concern" exemptions*

■ This Court has previously held that a debtor's cause of action for undercharge claims constitutes property of the bankruptcy estate under 11 U.S.C. § 541. *In re Best Refrigerated Express, Inc.,* Neb.Bkr 91:244, 246, 1991 Fed.Carr.Cas. (CCH) ¶ 83,624 (Bankr.D.Neb.1991). Therefore, on the date this bankruptcy case was filed, the right to pursue the undercharge claim did pass from Best to the bankruptcy estate.

Also, the NRA is "applicable nonbankruptcy law" under 11 U.S.C. § 541(c), or "applicable law" under 11 U.S.C. § 363(*l*). There is no doubt that the NRA is not bankruptcy law, but is a part of the ICA. *Patterson v. Shumate,* — U.S. —, —, 112 S.Ct. 2242, 2246, 119 L.Ed.2d 519 (1992) (holding that "applicable nonbankruptcy law" includes federal statutory law).

It is also indisputable that Section 2(a)(f)(9)(A) of the NRA would terminate the estate's property interest by extinguishing the trustee's right to pursue the undercharge claim it has pending against movant. Section 2(a)(f)(9)(A), codified at 49 U.S.C. § 10701(f)(9)(A), eliminates all undercharge claims currently pending against "small-business concerns." Therefore, because movant is a "small business concern," the trustee,

under the NRA, no longer holds a claim for undercharges.

The trustee wants this Court to find that those subsections of the NRA which limit the rights of carriers no longer transporting property from bringing an undercharge claim to be construed as "financial condition" clauses which the Bankruptcy Code basically ignores. After so finding, the trustee wants the Court to find that such subsections are the basis for the exemption of claims against a small business concern. If the Court reaches that conclusion, the trustee desires a finding that the elimination of the trustee's claim against a small business concern directly violates the Bankruptcy Code.

This Court, after careful examination of the codified statute, finds that Section 2(a)(f)(9)(A) of the NRA, codified at 49 U.S.C. § 10701(f)(9)(A), is not conditioned upon the financial condition of the debtor. The trustee's argument that the "no longer transporting property" requirement of Section 2(a)(f)(1)(A) applies to Section 2(a)(f)(9) is incorrect because the statute clearly limits the "no longer transporting property" clause to paragraphs (2), (3), and (4), not to paragraph (9), the small business concern paragraph.

Section 2(a) of the NRA is codified at 49 U.S.C. § 10701(f). Section 10701(f)(1)(A) states that a party must show that a carrier is no longer transporting property, if that party wishes to satisfy his claim under paragraphs (2), (3) and (4). A reference to paragraph (9), the small business concern paragraph, is noticeably missing from Section 10701(f)(1). However, Section 10701(f)(7) states that "*Except as authorized in paragraphs (2), (3), (4), and (9) of this subsection,*" nothing relieves a motor common carrier from filing its rates, complying with the law, and complying with ICC rules. 49 U.S.C. § 10701(f)(7) (emphasis added).

It is apparent from a comparison of the two subsections discussed above that Congress does not intend for the courts to consider the "no longer transporting property" requirement under Section 10701(f)(1)(A), when evaluating a shipper/brokers "small-business concern" defense under Section 10701(f)(9). Had Congress intended the "no

longer transporting property" clause of (f)(1)(A) to apply to (f)(9), the small business concern paragraph, it would have listed paragraph (9) with (2), (3) and (4) under Section 10107(f)(1), as it did under 10701(f)(7). A court should not read a paragraph into a statutory section when Congress left the paragraph out. Section 10701(f)(9) states that if movant qualifies as a "small-business concern," which it does, it is excused from being liable to Best or its representative for the undercharge claim. The "small business concern" exemption stands on its own, without reference to the operating or non-operating status of the carrier.

### 2. "Financial condition" is not equivalent of "no longer transporting property"

■ In the alternative, even if the trustee were correct and Section 10701(f)(1) did extend to Section 10701(f)(9), the "no longer transporting property" clause does not constitute the equivalent of a clause terminating the debtor's interest in property based upon the "financial condition" of the debtor. It is not the financial condition of the carrier that triggers the termination of the property interest, it is the retroactive application of the NRA that terminates the property interest. Congress has used Section 10701(f)(1) to redefine non-operating carriers' property rights (that is, the right to pursue undercharge claims) and apply that definition retroactively to alter already existing property rights without regard to a carrier's financial condition. This issue is not related to Sections 541(c)(1)(B) and 363($l$) of the Bankruptcy Code, which provide that the debtor has certain property rights notwithstanding nonbankruptcy statutory language which purports to limit such rights based upon the financial condition of the debtor.

For example, if Best had ceased operating, but did not file bankruptcy, the "no longer transporting property" clause under 49 U.S.C. § 10701(f)(1) would still apply, and Best would be unable to pursue its undercharge claim. However, under such circumstances, the Bankruptcy Code would not apply to the nonbankrupt non-operating carrier. Therefore, the financial condition of Best is not a factor which causes Section 10701(f)(1) to apply.

Considering a different factual scenario, if Best filed a Chapter 11 case, but decided in good faith to continue operating, and was able to continue operating, it would not lose its undercharge claim by virtue of Section 10701(f)(1). At least one court has held that when a motor carrier in Chapter 11 bankruptcy is still operating, and not continuing operation to avoid the applicability of Section 10701(f), the motor carrier debtor is not subject to the portions of the NRA qualified by the "no longer transporting property" clause. *Gross Common Carrier, Inc. v. A.B. Dick Co.,* 1994 WL 8241, *3–4, 1993 U.S.Dist. LEXIS 18667, *9 (N.D.Ill. December 21, 1993); *see also Jones Trust Lines, Inc. v. Aladdin Synergetics, Inc.,* 1994 WL 150154, *5 n. 9, 1994 U.S.Dist. LEXIS 3191, *15 n. 9 (M.D.Tenn. February 11, 1994). Therefore, the financial condition of the bankrupt debtor does not terminate or modify the operating debtor's right to continue to pursue undercharge claims, and the debtor has the identical property rights under the NRA as a nonbankrupt motor carrier.

Since the two criteria, "financial condition" and "no longer transporting property," are not the same, the NRA does not violate 11 U.S.C. §§ 541(c)(1), 363($l$).

### Conclusion

The defendant is a "small business concern" exempt from undercharge claims. The motion for summary judgment is granted.

Separate judgment entry shall be filed.

### JUDGMENT

Defendant is a "small business concern." The NRA eliminates claims for motor carrier undercharges against "small business concerns." Plaintiff, therefore, has no claim and judgment is entered against plaintiff and in favor of defendant on the motion for summary judgment.