JONES TRUCK LINES, INC., Debtor–In–Possession, Plaintiff,

v.

POLYFLEX FILM & CONVERTING, INC., Defendant.

Civ. A. No. 3:93–CV–319(L)(C).

United States District Court, S.D. Mississippi, Jackson Division.

June 9, 1994.

 

James D. Harrell, IV, James D. Harrell, Attorney, Hattiesburg, MS, for plaintiff.

Harold D. Miller, Jr., Butler, Snow, O'Mara, Stevens & Cannada, Jackson, MS, for defendant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

Plaintiff Jones Truck Lines, Inc. (Jones), a bankrupt interstate trucking company, filed this action on July 1, 1993 against defendant Polyflex Film & Converting, Inc. (Polyflex), pursuant to 49 U.S.C. §§ 10741, 10761 and 10762 of the Interstate Commerce Act, 49 U.S.C. § 10101 *et seq.*, seeking to recover approximately $6,500 in undercharges relating to forty-six shipments transported by Jones during the period from July 20, 1988 through January 4, 1991. On April 22, 1994, Jones moved for summary judgment, arguing that the shipments at issue were transported pursuant to its common carrier authority, that Jones had originally charged Polyflex less than the applicable common carrier tariff rates and that it is, therefore, entitled to collect the difference between its common carrier tariff rates and the rates originally billed and paid by Polyflex. Polyflex responded to Jones' motion, contending that while it had alleged and could establish a number of defenses to Jones' claim, it was not necessary for the court to reach the

merits of each of those defenses in light of the Negotiated Rates Act of 1993, 49 U.S.C. § 10701, which, it contended, exempts Polyflex, a "small business concern," from any liability for undercharges. And, on the basis of the Negotiated Rates Act, Polyflex filed its own motion for summary judgment, seeking dismissal of Jones' complaint. The court has considered Polyflex's motion for summary judgment, together with Jones' response to that motion, and concludes that the defendant's motion has merit and should be granted.

The circumstances that have given rise to the present litigation are by no means uncommon. To the contrary, this case presents a factual scenario that has become commonplace and has been the subject of much litigation. As is typical, upon Jones' filing for bankruptcy protection,[1] the trustee engaged an auditor to review Jones' past freight bills. The audit revealed that Jones had negotiated rates with many of its customers, including Polyflex, which were less than Jones' applicable tariff rate on file with the Interstate Commerce Commission pursuant to the Interstate Commerce Act, 49 U.S.C. § 10761(a). It was determined that these customers had been billed and had paid these lower rates, and thus had been "undercharged." Therefore, Jones has pursued claims against these customers, including Polyflex, to recover these undercharges.

On December 3, 1993, while this case was pending, Congress passed the Negotiated Rates Act of 1993 (NRA), Pub.Law 103–180, 107 Stat. 2044 (amending 49 U.S.C. § 10101 *et seq.*), which significantly amended the Interstate Commerce Act by adopting new standards for determining whether, and under what circumstances and by what means, a carrier may collect undercharges.[2] Polyflex' present motion is premised on Section 2 of the NRA, codified at 49 U.S.C. § 10701(f)(9), which provides in pertinent part as follows:

1. Jones filed a Chapter 11 petition for reorganization under Chapter 11 of the Bankruptcy Code on July 9, 1991 in the United States Bankruptcy Court for the Western District of Arkansas, Fayetteville Division, Case No. 91–15475–M.

2. The bill, *inter alia,* provided formulas for settling undercharge disputes and provided that unreasonable practices are a valid affirmative defense to undercharge claims.

Claims Involving Small–Business Concerns, Charitable Organizations, and Recyclable Materials.

Notwithstanding paragraphs (2), (3), and (4), a person from whom the additional legally applicable and effective tariff rate or charges are sought shall not be liable for the difference between the carrier's applicable and effective tariff rate and the rate originally filed and paid

(A) If such person qualifies as a small-business concern under the Small Business Act (15 U.S.C. § 631 *et seq.*). . . .

Polyflex contends that it is a "small-business concern" under the Small Business Act, and hence cannot be liable to Jones for any undercharges. Jones does not dispute that Polyflex is a small-business concern within the meaning of this section.[3] It does oppose defendant's motion, though, arguing that the NRA does not apply to bankrupt carriers, and that even if the Act could be construed to so apply, the "small business" exception of the NRA is nevertheless inapplicable in this case since plaintiff's claims arose before enactment of the NRA.

 In the face of the legislative history of the NRA, one can hardly dispute that this legislation was conceived primarily as a means of dealing with undercharge claims brought by bankrupt motor carriers like Jones. *See* S.Rep. No. 103–79, 103d Cong., 1st Sess. 1 (1993) ("The bill . . . is intended to alleviate the freight motor carrier "undercharge" litigation crisis by establishing a statutory procedure for resolving disputes resulting from efforts by *trustees for bankrupt motor carriers* . . . to collect additional amounts for past transportation provided. . . .") (emphasis added); H.R.Rep. No. 103–359, 103d Cong., 1st Sess. 7 (1993), U.S.Code Cong. & Admin.News 1993, p. 2534 ("The purpose of H.R. 2121 . . . is to provide a statutory process for resolving disputes for claims involving negotiated transportation rates *brought about by trustees for non-operating motor carriers* for past transportation services.") (emphasis added). Jones, though,

insists that the NRA, as ultimately enacted, does not apply to claims of bankrupt motor carriers, citing the court to Section 9 of the Act, which states, "Nothing in the Act . . . shall be construed as limiting or otherwise affecting application of title 11, United States Code, relating to bankruptcy; [or] title 28, United States Code, relating to the jurisdiction of the courts of the United States (including bankruptcy courts) [.]" According to Jones, the Section 9 amendment, which it contends unambiguously relieves all bankrupt carriers from compliance with the Act's requirements, represents a last minute compromise by the House to exclude all bankruptcy cases from the requirements of the NRA, as evidenced by certain correspondence between Norman Mineta, Chairman of the Public Works and Transportation Committee and the principal sponsor of the NRA, and Jack Brooks, Chairman of the Judiciary Committee. In the first of several letters, Representative Brooks, whose committee oversees the bankruptcy court and federal court jurisdiction, advised Representative Mineta, whose committee oversees the Interstate Commerce Act, that his committee had not had an opportunity to review the proposed bill "and consider its impact on the bankruptcy system, administrative law and the jurisdiction of the Federal courts. Such an opportunity is essential if the committee is to carry out its mandate to ensure the integrity and consistency of the Code in these areas of the law." In responsive correspondence, Representative Mineta indicated that they had been able to "agree on language clarifying that we do not intend this legislation to affects [sic] either the Bankruptcy Code or the jurisdiction of the bankruptcy courts." Section 9 was thus appended to the bill.

Jones maintains that this section was deliberately crafted to avoid the Judiciary Committee's assertion of jurisdiction and to assure passage of the bill which, while perhaps originally intended to apply against bankrupts, in the final, enacted version entirely excluded bankrupts from the Act's coverage.

---

**3.** As established by the uncontroverted affidavit of Allen D. Barnes, Chief Executive Officer of Polyflex, Polyflex is a manufacturer of plastic bags which during all relevant periods, did not

have more than 144 employees. As such, it is properly classified as a "small business" under the applicable Small Business Administration regulations set forth in 13 C.F.R. § 121.601.

The court is of the opinion, however, that Section 9 was never intended to exempt bankrupt carriers from coverage of the NRA, but rather was intended only to address questions of jurisdiction of the bankruptcy courts. This was made clear by the statements of Representatives Mineta and Brooks on the House floor. Mineta explained the Section 9 amendment, stating:

We are clarifying in Section 9 of this bill that we do not intend in this legislation to affect either the bankruptcy code or the jurisdiction of the bankruptcy courts, matters over which our committee does not have jurisdiction. At present, when a carrier is in bankruptcy, and when in the course of the bankruptcy an issue arises over which the ICC has particular expertise, the court typically refers that issue to the ICC pursuant to the doctrine of primary jurisdiction. The ICC decides that particular issue, and the ICC's decision is then incorporated by the court into the overall adjudication of the bankruptcy case. Nothing in this legislation would alter the current statutory framework which established the respective jurisdictions of the courts and the ICC.

139 Cong.Rec. H9603 (daily ed. Nov. 15, 1993). The notion that the amendment related to issues of jurisdiction was echoed by Representative Brooks, who stated:

The Committee on the Judiciary had earlier expressed concern that H.R. 2121, the Negotiated Rates Act of 1993, as ordered reported by the Committee on Public Works and Transportation, could have been construed to limit the jurisdiction of the Federal courts, including the bankruptcy courts.... However, Mr. Mineta has offered an amendment to section 9 of H.R. 2121 clarifying that nothing in the proposed act shall be construed to limit or otherwise affect the jurisdiction of the Federal courts to make determinations in bankruptcy cases and proceedings.

*Id.* In light of these explanations, by the very persons claimed by Jones to have effected the "compromise" resulting in Section 9, the court cannot accept Jones' position.

■ The court would reiterate that the legislative history of the NRA reveals that a primary impetus for the NRA was Congress' concern over the efforts of bankrupt carriers to collect undercharges. Patently, one of Congress' main objectives in passing the NRA was to place restrictions on that practice, which it considered unfair and inimical to the interests of American business. To accept the position espoused by Jones, the court would be forced to conclude that Congress, in one fell swoop, chose to eviscerate its manifest intention without the benefit of debate or discussion, and by what is at best an inartfully worded amendment. Logic precludes the court's ascribing to Congress such an irrational intention. Further, the court would observe that while one bankruptcy court has held that the NRA cannot be applied to bankrupt debtors, or at least those which have ceased operating, *see In re Bulldog Trucking of Georgia, Inc. v. E.I. Du Pont De Nemours & Co.,* 173 B.R. 517 (W.D.N.C.1994), every other court to address this issue has given effect to Congress' clear intent that the Act apply in such cases. *See Jones Truck Lines, Inc. v. Grinnell Corp. Anvil Prods Div.,* 167 B.R. 488 (N.D.Ill.1994) ("After a review of the plain language of the NRA and its legislative history, it is the opinion of the Court that Congress intended the NRA to apply to bankrupt debtors."); *Hoarty v. Midwest Carriers Corp.,* 168 B.R. 978 (Bankr.D.Neb.1994) ("There is nothing in any legislative history materials and, more importantly, in the language of the statute to suggest that Section 9 was added to exempt bankrupt carriers from the NRA, or that it was ever even suggested by any member of Congress that the NRA would not apply to bankrupt carriers."); *Jones Truck Lines, Inc. v. United States Brass Corp.,* No. 3:93–CV–1318–T, 1994 WL 395667 (N.D.Tex. Apr. 7, 1994) (rejecting Jones' contention that NRA was inapplicable to bankrupt carriers); *Jones Truck Lines, Inc. v. Madix Store Fixtures,* No. 3:93–CV–0925–T, 1994 WL 416154 (N.D.Tex. Apr. 7, 1994) (same); *Lewis v. H.E. Wisdom & Sons,* No. 93 C 0985, 1994 WL 110659 (N.D.Ill. Mar. 31, 1994) ("Rather than according an unduly strained interpretation of § 9 of the Act, the clear intent of Congress to remedy the undercharge litigation crisis involving bankrupt carriers will be given effect here."); *Jones Truck Lines, Inc. v. Alliance Rubber Co.,* 166 B.R. 691

(W.D.Ark.1994) ("The Court has reviewed the legislative history of Section 9 of the NRA as well as the [legislative history] and concludes ... that it shows the NRA was clearly passed in response to claims made by trustees for bankrupt motor carriers."); *Jones Truck Lines, Inc. v. Admiral Marine Co., Inc.,* 858 F.Supp. 71 (E.D.La.1994) ("[F]rom its legislative history it is clear that Congress intended the NRA to apply to exactly the situation presented by the case at bar—a bankrupt motor carrier suing past shippers to collect the difference between the rate actually charged and the rate on file with the ICC."); *Jones Truck Lines, Inc. v. AFCO Steel, Inc.,* 849 F.Supp. 1296 (E.D.Ark.1994) (NRA applies to bankrupt motor carriers); *Allen v. ITM Ltd. South,* 167 B.R. 63 (M.D.N.C.1994) ("Without question, the Negotiated Rates Act of 1993 was intended by Congress to address precisely the case that is now before the court" involving a bankrupt motor carrier); *Jones Truck Lines, Inc. v. Aladdin Synergetics, Inc.,* No. 3-93-0442, 1994 WL 150154 (M.D.Tenn. Feb. 14, 1994) ("The interpretation urged by Jones is absurd and patently at odds with Congress' intent in enacting the N.R.A. ... This court construes the N.R.A. consistent with Congress' intent, as applying to bankrupt carriers."); *see also Jones Truck Lines, Inc. v. Kraft Gen'l Foods,* No. 93 C 3719, 1994 WL 194292 (N.D.Ill. May 5, 1994) (applying NRA to bankrupt carrier without discussion of issue); *Jones Truck Lines, Inc. v. Chattem, Inc.,* No. 1:93–CV–281, 1994 WL 525877 (E.D.Tenn. Jan. 31, 1994) (same); *Jones Truck Lines, Inc. v. Acme Frame Prods., Inc.,* No. J–C–93–197, 1994 WL 408746 (W.D.Ark. Jan. 11, 1994) (same); *Gross Common Carrier v. A.B. Dick Co.,* 861 F.Supp. 638 (N.D.Ill.1994) (same). This court is in complete accord with the reasoning which has led these many courts to conclude that the NRA applies to bankrupt motor carriers.

▮▮▮▮ Jones next implies that even if Section 9 does not in clear terms abrogate the NRA's application to bankrupt carriers, the NRA nevertheless may not be applied to preclude its recovering undercharges from Polyflex since to do so would violate its rights under the bankruptcy code.[4] The court cannot agree. Jones is correct in saying that under the bankruptcy code, and specifically, 11 U.S.C. § 541, its freight undercharge claim became property of the bankruptcy estate when its bankruptcy petition was filed. Section 541(c)(1) provides further that the debtor's interest in property becomes the property of the bankruptcy estate "notwithstanding any provision in applicable nonbankruptcy law—(B) that is conditioned on the insolvency or financial condition of the debtor, ... and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property." There can be no question but that the NRA is applicable nonbankruptcy law and that application of the small business exemption would result in the termination of Jones' interest in the undercharge claims. However, the small business exception is not "conditioned on the insolvency or financial condition of the debtor...." Consequently, regardless of how 11 U.S.C. § 541(c)(1) might impact other provisions of the NRA, application of the small business exemption does not conflict with the anti-forfeiture provision of § 541(c)(1).[5] *See In re Best Refrigerated Express,* 168 B.R. 978 (Section 2(a)(f)(9)(A), codified at 49 U.S.C. § 10701(f)(9)(A), small business concern paragraph, is not condi-

---

4. Jones states in its brief that "when Plaintiff's bankruptcy commenced, Section 541(a) of the Bankruptcy Code included that claim as property of the estate and under Section 704 the Trustee must collect and reduce that claim to money. The only interpretation which gives effect to Section 9 is that the NRA will not affect the claims of bankrupts which existed at the time of bankruptcy. Otherwise, Section 9 of the NRA limits the application of Section 541(a) because it reduces the property of the estate as it stood on the date of the commencement of the case, and it limits the application of Section 704 because the Trustee can no longer collect and reduce to money the property of the bankruptcy." Although the argument set forth in the text has not been advanced by Jones with clarity, a similar argument has been advanced by Jones in other cases and it is assumed that this is the argument which Jones is attempting to make in the case at bar.

5. An issue has arisen in a number of cases concerning whether certain provisions of the NRA that are applicable only to motor carriers which are "no longer transporting property" are properly construed as being "conditioned on the financial condition" of the debtor, within the meaning of 11 U.S.C. § 541 and similar provi-

tioned on the financial condition of the debtor).

In a final effort to avoid summary judgment, Jones argues, curiously, that Section 2(e) of the NRA, which makes it an unreasonable practice to attempt to charge or charge the difference between the lawful tariff rate and a negotiated rate, applies prospectively only and hence cannot be applied to its claims against Polyflex, which were pending on the date the NRA was enacted. Whether or not that is the case is of no import whatsoever in this case, and need not be given the slightest attention by the court, since Congress specifically provided at Section 2(c) that the small business exemption, the sole basis upon which Polyflex currently seeks dismissal, applies "to all claims pending as of the date of the enactment of the [NRA]...." Consequently, that exemption does, in fact, apply to Jones' undercharge claim against Polyflex.

In *Adrian Waldera Trucking, Inc. v. Quality Feeds, Inc.,* 848 F.Supp. 853, 856 (W.D.Wis.1994), the court explained succinctly, and correctly, that "[q]ualified small businesses which have been billed and have paid for shipping costs are exempt from subsequent claims that the filed tariff exceeded the amount billed. *Nothing additional need be shown to take advantage of this exemption.*" (emphasis added). Polyflex has made the requisite showing and is entitled to judgment as a matter of law.[6]

Accordingly, it is ordered that the motion by Polyflex for summary judgment is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

---

sions of the bankruptcy code which invalidate forfeitures based on the debtor's insolvency or financial condition. *See, e.g., Jones Truck Lines, Inc. v. AFCO Steel, Inc.,* 849 F.Supp. 1296 (E.D.Ark.1994); *In re Bulldog Trucking of Georgia, Inc. v. E.I. Du Pont De Nemours & Co.,* 173 B.R. 517 (W.D.N.C.1994). The small business exception, though, applies irrespective of the status of the motor carrier's operations.

6. It follows that Jones' motion for summary judgment is now moot.