In the Matter of BROWN TRANSPORT TRUCKLOAD, INC., Brown Transport Corp., Thurston Motor Lines, Inc., Debtors.

Frank W. SCROGGINS, as Successor Trustee on Behalf of the Bankruptcy Estate of Brown Transport Truckload, Inc., Brown Transport Corp., and Thurston Motor Lines, Inc., Plaintiff,

v.

SOUTHERN WIPERS, INCORPORATED, Defendant.

Bankruptcy Nos. A89–12515–WHD, A89–12517–WHD and A89–12521–WHD. Adv. No. 91–6954A.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Dec. 9, 1994.

T: Gordon Lamb, Lamb & Associates, Norcross, GA, for plaintiff.

Bruce Mitchell, Mitchell & Hersch, P.C., Atlanta, GA, for defendant.

## ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

This matter comes before the Court on the Motion for Summary Judgment filed in this proceeding on August 16, 1994, by the defendant Southern Wipers, Inc. (hereinafter "Southern Wipers"). By its Motion, Southern Wipers seeks judgment in its favor in an adversary proceeding commenced by the former trustee Robert E. Brizendine, and currently pursued by the successor trustee Frank W. Scroggins, (collectively hereinafter "Trustee") as a Complaint for Turnover of Property and for Money Judgment. As such, the issues involved herein arise in a core proceeding over which this Court has jurisdiction. See 28 U.S.C. § 157(b)(2)(E). Based upon the reasons set forth below, the Court will deny the Motion.

### FACTUAL BACKGROUND

On October 31, 1989, Brown Transport Corporation, et al. (hereinafter "Debtor") filed for protection in this Court under Chapter 11 of the Bankruptcy Code. This case since has been converted to a Chapter 7. Prior to its bankruptcy petition, the Debtor operated a trucking company authorized to do business in interstate commerce pursuant to the rules and regulations of the Interstate Commerce Act (hereinafter "ICA") and the Interstate Commerce Commission (hereinafter "ICC"). The Debtor was authorized to operate as both a motor contract carrier and a motor common carrier. In its capacity as a motor carrier, the Debtor transported approximately 257 shipments for Southern Wipers during the period from January 5, 1988 through September 21, 1989.

Exactly two years after the Debtor commenced this case, the Trustee filed a Complaint against Southern Wipers seeking a turnover of property and a money judgment. The Trustee's claim was one for undercharges arising out of the transportation services the Debtor provided for Southern Wipers. Specifically, the Trustee sought to recover the difference between its tariff rates filed with the ICC and the agreed-upon lower rate in which Southern Wipers had paid in full. See 49 U.S.C. § 10761(a) & § 10762. The requirements of section 10761(a) often are referred to as the filed rate doctrine, which allows a carrier to receive payments for transporting goods based upon its filed tariff rates. The original freight charges given to and paid by Southern Wipers were issued showing a 52% discount from the filed rates with a minimum charge floor of $33.00.

The Trustee filed a Motion for Summary Judgment on April 3, 1992, asserting that the Debtor was entitled to collect the full tariff rate filed with the ICC as a matter of law. Evidence presented in the Trustee's Motion showed the amount of the undercharges owed to the Debtor's estate was $7,855.41. The Trustee arrived at this figure by alleging that the discounts given to Southern Wipers did not apply since they were not published in a tariff on file with the ICC. Instead, the Trustee argues that Southern Wipers was liable for the difference between the discount rates and the tariffs on file. Southern Wipers opposed the Trustee's Motion and filed its own Cross Motion for Reference to the ICC, asserting that the ICC had primary jurisdiction to determine issues of rate reasonableness and tariff construction and application.

This Court entered an Order dated June 30, 1992, which denied both the Motion for Referral to the ICC and the Motion for Summary Judgment. In denying Southern Wiper's Motion to refer to the ICC, the

Court concluded that rate reasonableness may not be used as a defense in a proceeding to collect the filed rate. This Court also declined to refer the issues involving rate applicability to the ICC. By Order dated August 25, 1992, the Court reversed its position on the issue of referral in view of the Fifth Circuit's opinion in *Advanced United Expressways, Inc. v. Eastman Kodak Co.*, 965 F.2d 1347 (5th Cir.1992), and referred this proceeding to the ICC for a determination of the issue of rate reasonableness and other questions involving the application and construction of tariffs.[1]

Since the time of referral, the Court has stayed these proceedings pending a resolution of the pertinent issues by the ICC. Significant legislative activity has occurred during this time, as well. In particular, Congress has enacted the Negotiated Rates Act of 1993 (hereinafter "NRA"),[2] which amends provisions of the ICA. The NRA provides various forms of relief and exemptions for shippers, such as Southern Wipers, who have been subjected to these freight undercharge claims. Contending that it is entitled to one of the exemptions, Southern Wipers has filed this Motion for Summary Judgment. The Trustee opposes the Motion, however, arguing that the NRA does not apply to bankruptcy.

## DISCUSSION

### A. The Application of the Negotiated Rates Act

■ As noted above, the Trustee's claim against Southern Wipers is based upon the filed rate doctrine of the ICA. Under this doctrine, a shipper, like Southern Wipers, is required to pay the tariff which a motor common carrier, like the Debtor, has filed with the ICC, notwithstanding the fact that the shipper and carrier had negotiated an otherwise enforceable contract to ship at a lower rate. The Supreme Court has held as much in the case of *Maislin Industries, U.S., Inc. v. Primary Steel, Inc.*, 497 U.S. 116, 126–28, 110 S.Ct. 2759, 2765–67, 111 L.Ed.2d 94 (1990). Under the authority of *Maislin*, trustees in bankruptcy have brought a significant number of suits to compel shippers to pay the difference between the negotiated rate and the filed rate, this despite the fact that the subject transactions may have occurred many years before.

To combat the perceived inequities of a strict enforcement of the filed rate doctrine, as well as the proliferation of turnover actions brought by bankruptcy trustees, Congress enacted the NRA.[3] In so doing, Congress has attempted to protect these shippers by arming them with various defenses. One such defense added by the NRA, and the one pertinent to this proceeding, is the small business exemption, which provides as follows:

[A] person from whom the additional legally applicable and effective tariff rate or charges are sought shall not be liable for the difference between the carrier's applicable and effective tariff rate and the rate originally billed and paid—

---

1. The Court acknowledges the technical inaccuracy of the term "referral" in such a case. *See Reiter v. Cooper*, — U.S. —, — n. 3, 113 S.Ct. 1213, 1220 n. 3, 122 L.Ed.2d 604 (1993) (noting that the "referring" court has no such authority and that in practice it merely stays or dismisses the proceeding while the parties file a petition with the ICC). Nonetheless, because "referral" remains the commonly used term for the involved procedure, this Court will employ it.

2. Negotiated Rates Act of 1993, Pub.L. No. 103–180, 107 Stat. 2044 (codified in various sections of 49 U.S.C.).

3. The legislative history of the NRA provides an example of an inequitable application of the filed rate doctrine:

     A small wholesale mom-and-pop carpet distributor with only six employees shipped car-

pet at a rate of 16 cents per yard—exactly the price they had agreed upon with the trucking firm hired to deliver it. The carpet was delivered, they paid the bill. End of story. Right?

     Wrong. Two years later the trucker went bankrupt and the trustee who was appointed for the firm found a higher charge for the shipment—a lot higher. This small firm, the kind that makes up the backbone of the American economy, was sued for $16,892 in undercharges for one small shipment. That made the freight charge $32 per yard for carpet that costs $1.79 to $6.99 per yard at the retail level. That amounts to more than a 20,000–percent increase.

139 CONG.REC. H9596 (statement of Rep. Shuster, Nov. 15, 1993) (quoted in *Allen v. ITM, Ltd. South*, 167 B.R. 63, 66 (M.D.N.C.1994)).

(A) if such person qualifies as a small-business concern under the Small Business Act (15 U.S.C. 631 et seq.) ...

49 U.S.C. § 10701(f)(9)(A) (codifying section 2(a) of the NRA).[4] In filing its Motion for Summary Judgment, Southern Wipers argues that it is a small business exempt from liability for the Trustee's undercharge claim pursuant to the NRA. Before considering whether the facts of this proceeding support Southern Wipers' arguments, the Court first must address the Trustee's contentions that the NRA does not apply to bankruptcy proceedings. In support of his position, the Trustee relies upon the provisions of 11 U.S.C. § 541(c)(1) and section 9 of the NRA. The Court will consider each section separately.

### 1. Section 541(c)(1) of the Bankruptcy Code

■ Section 541(c)(1) of the Bankruptcy Code prevents otherwise applicable nonbankruptcy law from causing a forfeiture of the debtor's property based on the debtor's insolvency or financial condition. 11 U.S.C. § 541(c)(1). In order for an argument to succeed under a section 541(c)(1), three specific conditions must exist: (1) the law in question is a provision of applicable nonbankruptcy law that (2) is conditioned upon the insolvency or financial condition of the Debtor and that (3) effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property. *North Penn Transfer, Inc. v. Polykote Corp.,* 170 B.R. 565, 567 (E.D.Pa.1994). In making this argument, the Trustee contends that the NRA satisfies all three of these requirements when applied to its undercharge claim against Southern Wipers.

For the purposes of this Motion only, the Court will concede that the application of the provisions of the NRA falls within the first and third elements of a section 541(c)(1) argument. Therefore, the critical inquiry here is whether the application of the NRA is conditioned upon the Debtor's insolvency or financial condition. In arguing that it does,

the Trustee relies upon section 2(a) of the NRA, which establishes procedures for resolving undercharge claims. This section provides in pertinent part as follows:

> [T]he person against whom the [undercharge] claim is made may elect to satisfy the claim under the provisions of *paragraph (2), (3), or (4)* of this subsection, upon showing that—
>
> (A) the carrier or freight forwarder is *no longer transporting property* or is transporting property for the purpose of avoiding the application of this subsection ...

49 U.S.C. § 10701(f)(1)(A) (emphasis added) (codifying section 2(a) of the NRA). The Trustee contends that the "no longer transporting property" language of this provision triggers the application of 11 U.S.C. § 541(c)(1). In other words, so his argument goes, a carrier that is no longer transporting property is, by definition, one that is suffering from insolvency or a difficult financial condition. One case, relied upon by the Trustee, has accepted this argument, noting in the process as follows:

> New Section 10701(f) gives shippers an option to satisfy the freight undercharge claims of specified motor carriers at discounts of 80%–100% of the amount of the undercharge claim. A shipper that is a "small business concern" is entitled to a *100%* discount under 49 U.S.C. § 10701(f)(9)/NRA § 2(a). In other words, Section 2(a) of the NRA gives a shipper that is a small business concern a total defense to the undercharge claims of the type of motor carrier specified in Section 2(a).
>
> Section 2(a) of the NRA specifies that the only type of motor carrier that suffers this deprivation of its right to recover undercharges is a [motor carrier] ... that "is no longer transporting property ..."

*E.I. Du Pont de Nemours & Co. v. Cooper,* 173 B.R. 550, 557 (W.D.N.C.1994) (emphasis in original) (affirming *Cooper v. E.I. Du Pont de Nemours & Co. (In re Bulldog Trucking, Inc.),* 173 B.R. 517 (W.D.N.C.1994)) (herein-

---

4. Despite its enactment in 1993, this provision has retroactive application to all claims pending

at the time of enactment. NRA at § 2(c).

after *"Bulldog Trucking"*). Therefore, the Trustee argues that the small business exemption of the NRA cannot apply to relieve Southern Wipers of liability in this case as it violates 11 U.S.C. § 541(c)(1).

The Court cannot accept the section 541(c)(1) argument for two reasons. First, the argument asserted by the Trustee and *Bulldog Trucking* suffers from a fundamental error, *i.e.*, both assume that the small business exemption comes into play only in cases in which the motor carrier "is no longer transporting property." A cursory reading of section 2(a) of the NRA reveals this not to be the case. Specifically, the "no longer transporting property" language of the NRA has significance only when a shipper elects to "satisfy the claim under paragraph (2), (3), or (4)" of 49 U.S.C. § 10701(f). The small business exemption may be found in *paragraph (9)*. In other words, this exemption applies against any carrier, regardless of whether or not it is operating. As such, the Trustee cannot challenge the small business exemption of 49 U.S.C. § 10701(f)(9) based upon 11 U.S.C. § 541(c)(1), because the exemption is a blanket provision that applies to all carriers regardless of their operating status. All courts, except *Bulldog Trucking*, that have considered this point have reached the same conclusion. *See, e.g., Adrian Waldera Trucking, Inc. v. Quality Liquid Feeds, Inc.*, 848 F.Supp. 853, 855–56 (W.D.Wis.1994); *De'Medici v. FDSI Management Group (In re Lifschultz Fast Freight Corp.)*, 174 B.R. 271, 277–78 (N.D.Ill.1994); *North Penn Transfer*, 170 B.R. at 567; *Jones Truck Lines, Inc. v. Casablanca Convertors, Inc.*, 1994 WL 409432, at *2 (W.D.La.1994); *Hoarty v. Midwest Carriers Corp. (In re Best Refrigerated Express, Inc.)*, 168 B.R. 978, 984–85 (Bankr.D.Neb.1994); *see also* Wayne Johnson, *The Negotiated Rates Act of 1993: Congress Curtails Undercharge Litigation in Bankruptcy by Amending the Filed Rate Doctrine*, 68 AM.BANKR.L.J. 319, 393–94 (1994).

The second reason the Trustee's argument must fail is that, assuming the small business exemption is contingent upon the operating status of a carrier, the anti-forfeiture provisions of 11 U.S.C. § 541(c)(1) still do not apply. In reaching their erroneous conclusions, both the Trustee and *Bulldog Trucking* equate the phrase "no longer transporting property" with the phrase "conditioned on the insolvency or financial condition of the debtor." The Court does not agree that these two criteria are the same. Specifically, the NRA applies to any carrier that ceases operations and not merely to those that do so due to their insolvency or poor financial condition. Moreover, the NRA would *not* apply to a carrier that is operating under insolvent conditions or financial duress. Take as an example any carrier that files bankruptcy under Chapter 11 due to its insolvency or financial condition. Clearly, such insolvency and financial condition falls within the meaning of section 541(c)(1). Nevertheless, the NRA would not apply since the carrier is still operating, albeit in bankruptcy. Assume that a few months later, the carrier, still suffering from the same financial condition, converts to Chapter 7 and ceases operations. At that point, the NRA would apply. As this example demonstrates, the application of the NRA is triggered by the operational status of the carrier, and not by its insolvency or financial condition as required before section 541(c)(1) can take effect.

By equating the phrase "no longer transporting property" with a carrier's insolvency or financial condition, the Trustee and *Bulldog Trucking* fail to recognize that there is a meaningful distinction within the NRA between the operational and nonoperational status of a motor carrier. As one court has noted:

> [T]he forces of the marketplace and the incentive to maintain good business relations will restrain operating carriers from making unfounded or tenuous undercharge claims, but there is no such check on non-operating carriers.

*Jones Truck Lines, Inc. v. AFCO Steel, Inc.*, 849 F.Supp. 1296, 1305 (E.D.Ark.1994). As such, the Court has no problem in concluding that section 541(c)(1) does not prevent the application of the NRA in bankruptcy cases. Significantly, virtually every court that has addressed this question has reached the same conclusion. *See, e.g., North Penn Transfer, Inc. v. Victaulic Co. of Am.*, 859

F.Supp. 154, 160 n. 3 (E.D.Pa.1994); *Jones Truck Lines,* 849 F.Supp. at 1304–05; *North Penn Transfer,* 170 B.R. at 567; *Jones Truck Lines, Inc. v. Frigid Fluid Co.,* 169 B.R. 52, 54–55 (N.D.Ill.1994); *Best Refrigerated Express,* 168 B.R. at 985; *Jones Truck Lines, Inc. v. Grinnell Corp.,* 167 B.R. 488, 492–93 (N.D.Ill.1994); *Allen v. ITM, Ltd. South,* 167 B.R. 63, 66 (M.D.N.C.1994); *L. Lou Allen, Trustee on Behalf of the Bankruptcy Estate of TSC Express Co. v. Dillard Paper Co. of Atlanta, Inc.,* 1994 WL 526000 *3 (N.D.Ga., July 28, 1994); *Merritt W. Smith, Trustee v. Joe E. Tex, Inc. (In re Day's Express, Inc.),* Adv. Case No. 91–993, slip op. at 4–5 (Bankr. S.D.Ind., June 16, 1994); *Jones Truck Lines, Inc. v. Polyflex Film & Converting, Inc.,* 173 B.R. 576, 580 (S.D.Miss.1994); *see also* Johnson, 68 Am.Bankr.L.J. at 392–94; *but see Jones Truck Lines, Inc. v. IXL Mfg. Co. (In re Jones Truck Lines, Inc.),* 172 B.R. 602, 611–13 (Bankr.W.D.Ark.1994); *cf. Beyer v. Bend Millworks (In re Parker Refrigerated Serv., Inc.),* 173 B.R. 704, 710–13, 715–17 (Bankr.W.D.Wash.1994) (finding violation of section 541(c)(1) but holding that NRA prevails over Bankruptcy Code). In view of its own analysis of the applicable provisions, in addition to the great weight of case authority, the Court cannot agree with the Trustee and *Bulldog Trucking* that the NRA is an anti-forfeiture provision that violates 11 U.S.C. § 541(c)(1).

### 2. *Section 9 of the NRA*

■ Section 9 of the NRA provides as follows:

> Nothing in this Act (including any amendment made by this Act) shall be construed as limiting or otherwise affecting application of title 11, United States Code, relating to bankruptcy; title 28, United States Code, relating to the jurisdiction of the courts of the United States (including bankruptcy courts); or the Employee Retirement Income Security Act of 1974.

NRA § 9 (not codified). The Trustee relies upon the language of this section, as did *Bulldog Trucking,* to argue that Congress did not intend for the NRA to apply to claims in bankruptcy. Once again, the Court must disagree. It is clear from the legislative history that the issue of excessive trustee litigation in bankruptcy was a problem which the NRA sought to address in the first place. *See Matter of Best Refrigerated Express, Inc.,* 170 B.R. 158, 160 (Bankr.D.Neb.1994); *Jones Truck Lines,* 169 B.R. at 55; *Jones Truck Lines,* 167 B.R. at 493; *Jones Truck Lines, Inc. v. Alliance Rubber Co.,* 166 B.R. 691, 693 (W.D.Ark.1994); *Jones Truck Lines v. Aladdin Synergetics, Inc.,* 174 B.R. 76, 80–81 (M.D.Tenn.1994); *see also* H.R.Rep. No. 359, 103d Cong., 1st Sess. (1993), *reprinted in* 1993 U.S.C.C.A.N. 2534 (hereinafter "House Report"); 139 Cong.Rec. H9596 (statement of Rep. Shuster, Nov. 15, 1993). As such, to adopt the argument presented by the Trustee would eviscerate one of the primary purposes of the NRA.

More importantly, the language of section 9 does not require the Court to accept the Trustee's position. The Trustee seems to argue that the Court would be "limiting or otherwise affecting" the application of the Bankruptcy Code within the meaning of section 9 if it applied the NRA to his claim against Southern Wipers. Admittedly, the claim the Trustee is asserting against Southern Wipers is part of the Debtor's estate in bankruptcy, but it is important to point out that it is a claim dependent entirely upon nonbankruptcy law. As one court has stated, the Trustee's "interest in the property must be determined by nonbankruptcy law because bankruptcy law does not create any property rights." *Whitaker v. Power Brake Supply, Inc. (In re Olympia Holding Corp.),* 1994 WL 519044, at *9 (M.D.Fla.1994); *cf. Patterson v. Shumate,* — U.S. —, —, 112 S.Ct. 2242, 2246–50, 119 L.Ed.2d 519 (1992) (discussing application of nonbankruptcy federal law to bankruptcy case); *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) (noting that property interests asserted in bankruptcy are created by nonbankruptcy law). The rights that the Trustee has as to its undercharge claim, as well as the defenses to which Southern Wipers is entitled to assert, are governed by the ICA, as amended by the NRA, and not by the Bankruptcy Code. As such, the Court is not "limiting or otherwise affecting" the application of bankruptcy law

in this case, since it is not necessary to apply the Bankruptcy Code to determine whether the Trustee is entitled to relief for its undercharge claim. To hold otherwise, in effect, would be giving the Trustee interests in bankruptcy that the Debtor would *not* have outside of bankruptcy. *Accord Olympia Holding,* 1994 WL 519044, at *9.

It is worth mentioning that the inclusion of section 9 in the NRA has puzzled many courts, as it provides fodder for those who wish to object to the application of its provisions in bankruptcy, despite the fact that Congress clearly enacted the NRA to address concerns raised by undercharge claims in bankruptcy. A review of the legislative history, however, provides an explanation for the existence of section 9:

> Section 9 ... clarifies the Committee's intention that [the NRA] does not affect the jurisdiction of the courts of the United States, including bankruptcy courts, to determine any matter regarding a bankruptcy carrier, other than determinations statutorily required by the NRA to be resolved by the ICC. The obligation of the court or the bankruptcy court to refer any of these determinations to the ICC in accordance with this statute is mandatory and not discretionary. The committee intends in Section 9 that the courts in which the bankrupt carrier's estate is being adjudicated should continue to make all other determinations necessary to fully and finally wind up a bankruptcy carrier's estate proceeding.

139 CONG.REC. H9597 (statement of Rep. Shuster, Nov. 15, 1993); *see also,* 139 CONG. REC. H9603 (statements of Reps. Mineta and Brooks, Nov. 15, 1993); HOUSE REPORT at 14–17; *Best Refrigerated Express,* 168 B.R. at 982–84 (discussing legislative history of section 9). In short, Congress added section 9 "to clarify the jurisdiction of bankruptcy courts vis-a-vis the jurisdiction of the ICC." *Jones Truck Lines,* 849 F.Supp. at 1306. Section 9 does not, as the Trustee suggests, evidence Congress' intent to exempt the claims of carriers in bankruptcy from the application of the NRA. *Jones Truck Lines,* 172 B.R. at 607–11; *Allen v. Spiegel, Inc.,* 169 B.R. 394, 396 (N.D.Ill.1994); *Parker Re-*

*frigerated,* 173 B.R. at 715–16; *Lewis v. H.E. Wisdom & Sons, Inc.,* 1994 WL 110659, at *5–6 (N.D.Ill.1994); *but see Rushton v. Saratoga Forest Prods., Inc. (In re Americana Expressways, Inc.),* 172 B.R. 99 (Bankr. D.Utah 1994) (adopting trustee's interpretation to avoid possible constitutional problems with NRA).

## B. Motion for Summary Judgment

### 1. Standard

In accordance with Federal Rule of Civil Procedure 56 (applicable to bankruptcy under Fed.R.Bankr.P. 7056), this Court will grant summary judgment only if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material if it might affect the outcome of a proceeding under the governing substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party has the burden of establishing the right of summary judgment, *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991); *Clark v. Union Mut. Life Ins. Co.,* 692 F.2d 1370, 1372 (11th Cir.1982), and the Court will read the opposing party's pleadings liberally. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11.

In determining whether there is a genuine issue of material fact, the Court must view the evidence in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Rosen v. Biscayne Yacht & Country Club, Inc.,* 766 F.2d 482, 484 (11th Cir.1985). The moving party must identify those evidentiary materials listed in Rule 56(c) that establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *see also* Fed.R.Civ.P. 56(e). Once the motion is supported by a *prima facie* showing that the moving party is entitled to judgment as a matter of law, the party opposing the motion must go beyond the plead-

ings and demonstrate that there is a material issue of fact which precludes summary judgment. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Martin v. Commercial Union Ins. Co.*, 935 F.2d 235, 238 (11th Cir.1991).

### 2. Southern Wipers' Small Business Status

■ As noted previously in this Order, Southern Wipers contends in its Motion that it qualifies as a small business that is exempt from undercharge liability under the NRA. *See* 49 U.S.C. § 10701(f)(9)(A) (codifying section 2(a) of the NRA). Under the Small Business Act, a "small-business concern" is "one which is independently owned and operated and which is not dominant in its field of operation." 15 U.S.C. § 632(a)(1). The Act adds further:

> In addition to the criteria specified in paragraph (1), the [SBA] may specify detailed definitions or standards (by number of employees or dollar volume of business) by which a business concern is to be recognized as a small business concern for the purposes of this chapter or any other Act. . . .

15 U.S.C. § 632(a)(2). Therefore, under this statute, Southern Wipers may qualify as a small business concern if it can prove the following elements: (1) it is independently owned and operated; (2) it is not dominant in its field of operation; and (3) it falls within the standards set by the Small Business Administration (hereinafter "SBA") as to number of employees or dollar volume of business.

■ In considering the first element, Southern Wipers has presented evidence showing that it is a company not affiliated with any other company or business. *See* Tourtellot Aff. at ¶ 4(a) (May 5, 1994). In view of the fact that the Trustee has not presented anything to dispute this assertion, the Court finds this evidence sufficient to establish that Southern Wipers is independently owned and operated. As for the sec-

ond element, however, Southern Wipers has not presented any evidence to show that it is not dominant in its field of operation.[5] Therefore, the lack of any evidence prevents the Court from making a factual determination on this particular issue.

As for the third element, the Court must consider the standards specified by the SBA, which may be found in 13 C.F.R. § 121 (1994). As authorized by 15 U.S.C. § 632(a)(2), the SBA uses two alternating methods of size determinations in considering whether a particular concern may qualify as a small business: (1) annual receipts or (2) employees. *See* 13 C.F.R. §§ 121.402, 121.407 (1994) (setting definitions for these criteria). The size determination used for a specific case depends upon the Standard Industrial Classification code (hereinafter "SIC code") under which the particular entity falls. In this case, Southern Wipers is a manufacturer of wiping cloths, and its activities are classified under SIC code 2299. *See* Tourtellot Aff. at ¶¶ 2–3 (May 6, 1994). SIC code 2299 is the classification for textile goods, and an entity within this industry qualifies as a small business concern if it has 500 or less employees. 13 C.F.R. § 121.601 (1994). Southern Wipers has presented evidence in this case showing that during the relevant times in question, it did not have more than forty-eight employees. *See* Tourtellot Aff. at ¶ 4(b) (May 6, 1994). As such, Southern Wipers has satisfied the third necessary element.[6] Nevertheless, Southern Wipers' failure to present evidence on the second element prevents the Court from granting it summary judgment.

### CONCLUSION

In conclusion, the Court finds that the NRA applies to the Trustee's undercharge claim against Southern Wipers, notwithstanding the provisions of 11 U.S.C. § 541(c)(1) and section 9 of the NRA. Therefore, Southern Wipers is entitled to pursue the small business exemption defense of 49 U.S.C. § 10701(f)(9)(A). In considering

---

**5.** Southern Wipers may be able to comply with this element if it can satisfy the SBA's definition of "not dominant in field of operation" as set out in 13 C.F.R. § 121.406 (1994).

**6.** The Trustee argues that Southern Wipers has failed to present evidence of its annual receipts. The Court points out that SIC code 2299 places a limit upon the number of employees and does not set any requirements as to an entity's annual receipts.

this defense, the facts of this proceeding establish that Southern Wipers is independently owned and operated and that it satisfies the SBA size determination standard by having only forty-eight employees. Nevertheless, Southern Wipers has failed to present evidence to show that it is not dominant in its field of operation. Accordingly, Southern Wiper's Motion for Summary Judgment is hereby **DENIED.** Unless the parties can come to an agreement or stipulation as to the remaining dispute, the Court expects a consolidated pretrial order in thirty days in preparation for trial on this one narrow issue.

**IT IS SO ORDERED.**